23.629.23.764. Thanks. Mr. Kerfman. Thank you, Your Honors. For the reasons we've already discussed, we take no issue with the vast majority of the Court's analysis in N.G.B. which was entirely consistent with the other decisions               on appeal. We have requested this Court's intervention on a single, targeted issue, and we ask you to reverse the decision that N.G.B. was substantially justified in rejecting DOE's settlement offer. In finding N.G.B. substantially justified, the District Court interpreted this provision in a way that would dramatically undercut the IDEA's FECAP rule, departing from a fundamental canon of statutory construction. If N.G.B. were correct, parents would be substantially justified in rejecting a settlement offer any time they can develop remotely plausible arguments justifying it. Well, but this was not remotely plausible. Here, your argument has to be that because the offer that was made ultimately was more than what was gotten, a rejection was not substantially reasonable, even if the offer that was made was based on an error, the error being that certain times spent were not taken into account. And it seems to me that it is the most plausible thing that I can make an offer that in amount is large enough because I've done other things, but which is flawed because it has a basic error. And if I see that error, I can say no, which is what happened here, or at least what the District Court found. So I don't really understand your argument. If it is that people, judges, shouldn't do this as often, well, that again is a matter of a district judge's discretion. But if it is a specific case, I don't see what you're arguing. A couple points, Your Honor. First, we would dispute that this offer was based on a fundamental error, and that's for a couple reasons. The first is that Judge Lyman's calculations of reasonable rates that had accrued as of the offer date exceeded—the offer exceeded what Judge Lyman had calculated by 20 percent. So mathematically, that calculation did account for the additional work that— But Judge Lyman may have been wrong on figuring the earlier ones, but if he was right that the later ones were not taken into account, why doesn't somebody who receives this assume that he was right with respect to the earlier ones because what's his business to go after and say, no, you didn't do—but you were right in not taking any of this into account? I mean, Judge Lyman may well have been wrong with respect to the earlier ones, but again, I don't see how that affects this case. I would respond by noting that there is no evidence in the record that this settlement offer did not take account of additional summary judgment work, and I would argue that the work into account, and the reason is that when DOE made the offer, it was making the offer in response to messages from the Cuddy law firm explaining that Cuddy had been since working on— Okay, let's stay with this. You are saying that Judge Lyman was wrong in saying this did not take into account the later things. Okay? That's what you just told me. I'm a litigant. Judge Lyman tells me that this didn't take it into account. If a judge could make that mistake, isn't a litigant able to make the same mistake? A couple points. The first is that Judge Lyman's opinion itself laid out, I think, precisely why it would have been apparent to the Cuddy law firm that its additional work was accounted for in this calculation. But secondarily, the firm and the parents can do a calculation as to what would be a reasonable rate based on rates that are prevailing that have been awarded in the vast majority of these cases, and determine that the total amount that the Department of Education was offering at those rates would have accounted for additional work past the date that the last billing statement was submitted. So I think that the parents and the firm were in a perfect position to understand that this offer did take account of additional work. And frankly, it's quite common for offers to be presented after billing statements have been submitted where additional work may have accrued in the interim. What if Judge Lyman ultimately concluded that the proper hourly rate was the one that Judge Hallerstein had awarded? The number then comes out very differently. And from the standpoint of counsel, why is it unreasonable for them to hope and argue because there is at least one judge who said that that's the appropriate hourly rate and hold out for that? What's unreasonable about that? I think a couple points. First, we'd emphasize that the decision in YG was, I think quite clearly, a substantial outlier in terms of the rates that were awarded compared to dozens and dozens of other cases. And so I think there's no fair way to say that it was likely that the firm would secure the rates awarded in YG. But remember, what you're doing is understandably, what this section of the law is doing, is understandably penalizing lawyers who don't accept fees that might be sensible because we want things to go along. But if there is a reasonable argument why those fees don't fit, isn't that consistent with a notion that, yeah, we want settlements, but we don't want to force settlements on people by having essentially a punitive clause because they haven't settled? We would disagree, Your Honor. We would argue that the standard that the plaintiffs are requesting here would substantially undermine the statutory purpose. What is the standard that you would have us embrace? So I would have the court, I would think about it in a couple ways. The first is I think the Supreme Court's decision in Pierce identified a standard that, of course, the court there adopted a reasonable person standard, but it identified a slightly higher standard that would have been a plausible alternative. The language there was justified to a high degree. Potentially, the court could look to language along the lines of the plaintiff is likely to recover or succeed on the arguments that they're presenting. I think there's a way to view this statute with a slightly higher threshold than what the plaintiffs are requesting and that what a simple reasonable personal standard would call for. But when Judge Lyman makes the finding that the plaintiff's position is substantially reasonable, why shouldn't we be deferring to that finding? In the other appeal, you are screaming from the mountaintop, right? Deference, deference, deference. But here it seems like you want us to have a de novo review of that finding by Judge Lyman. And I think the reason why we are insistent on the standard we are advocating for here on this targeted narrow issue is that the alternative is to substantially undercut a statutory provision in the IDEA that I think by its terms is designed to incentivize parties to resolve these disputes by settlement. And in the other issues that have been presented in these appeals, I don't see arguments that district courts are taking approaches that dramatically undermine the statutory scheme. All that would happen, though, is that the settlement offer would have to be higher. Right? I mean, you would try to anticipate the objections somebody might have to the settlement offer and you say, okay, we are not going to offer $5.50 an hour, but we are not going to offer $3.75 because that was the rate that Judge Costello awarded the last time the Rangers were good. Right? So it is like, okay, we are going to offer more to encourage, it is still going to encourage a settlement.  If I am understanding the question correctly, if . . . It is just Calabresi's point. Right now the concern is, from the standpoint of the plaintiff's bar, is that it is forcing them into a Hobson's choice of we are getting this lowball offer and you are saying that it is not substantially justified for them to reject that in the hopes that they can rely on Judge Hallerstein's view of the rates or even something below that, but closer to $5.50 than $3.75. Judge Lyman makes a finding that that is a justified reason. And your concern is settlements will go away or maybe instead of that what will happen is settlement offers will come in a little higher. You will still have settlements. They just may not be so much to your liking, but settlements are all about making both sides unhappy. Right? And our response would be that I think under the very low standard that the plaintiffs are advocating for, even if DOE were to begin coming in at higher offers, there will always be opportunities for plaintiffs to make some plausible argument that in fact they should have received rates even higher than what DOE was offering. And I think that's the fundamental problem with their argument. Thank you. Thank you, Your Honor. We ask that you rest. You reserve some time for rebuttal. That's okay. The substantial justification issue has been addressed and the parents in I think Mr. Kedde gets 10 minutes. The substantial justification issue has been addressed pretty well in our papers, and I'll just draw your attention to the BL versus District of Columbia decision that the parents relied on in rejecting these offers of settlement. And that decision states, Substantial justification for rejecting would include relevant pending court decisions, which could have an impact on the case in question. And then the cite to that cites to the legislative history, where the legislative history is defining what substantial justification is, and that it includes if there's cases pending that may impact on the litigation. I'll just draw the analogy of our follow-on appeals to this tandem appeal, that we have a lot of cases being held in abeyance, sent back from the circuit court down to the district court, waiting for this court's decision, because it will have an impact on how those fees are analyzed. And that is what we did when there were three factors in rejecting these offers. One is that we were waiting for the court's decision in SJ for some of these cases. Later, we received Judge Hellerstein's decision in YG. Okay. But now you're making an argument which is much broader, and it is beginning to trouble me, because if every time you bring cases, that allows the lawyers not to settle, and then say it was substantially justified, then simply by bringing these cases you can put things off. I think it is fair enough for a district judge to say, yeah, there are a hundred cases, but they've all been settled by HC, and so it's not justified to hold things off. That is, again, I would leave it up to the district judge to see whether the previous cases really cast doubt on the settlement or don't. And if a district judge found, as Judge Lyman, that in this case there were good reasons, okay. If a district judge said, come on now, these are cases which don't really change anything, and the lawyer knows it perfectly well, that might be okay, too. Yes, but, Your Honor, in these cases, in any of these cases, it's an individual analysis for that particular case. Might Judge Hellerstein's case impact on a future case? Yeah, I'm not saying no. It's just your generic statement by citing me, what is a correct legislative history, that the existence of cases may be relevant, can be read so broadly as to say, oh, well, then any time anything can be rejected, and I wouldn't be happy going that far. I agree. I wouldn't be happy with everyone going that far. But in the particular cases at hand, we did have those three factors. We had the SJ decision that was pending for some of them, and we're waiting for the decision in SJ from the circuit. Then we got Judge Hellerstein's decision, and we're rejecting because we don't know if everybody's going to line up behind Judge Hellerstein when he initially ruled. And then we were waiting for the decision on HC for some of these. So there was pending litigation that was very specific to these cases that caused rejection of offers that made it reasonable, based on this prior BL case that we relied upon and also based on the legislative history. May I ask a question? Yes. Is the question of whether a declination of an offer is substantially justified, is that a legal question or is that a question that's subject to clear? Is that a factual finding? So when Judge Lyman says they were substantially justified, was that a factual finding or is that a – because I think you're both arguing based on the language, the relevant statutory language. And you're both asking for different standards. I believe Judge Lyman himself made a factual finding here. Based on these facts, this is my finding. Are you suggesting it can be both? There may be some things you may not look at and some things that you must look at, but there are also facts that depend on and determine the case. Particular to NGB, I think it was a factual sequence of events that he was relying on to make a determination about. But in our reliance on BL, that's really – I don't know if it's a factual finding. How do I know that? When I say that you're substantially justified in saying X, how is that a fact? So what I'm trying to figure out is you're both asking us to apply different standards to figure out, I think, what is and what is not substantially justified. Is that right? I should just ask you. Forget both. You're asking us to apply a particular standard, right? Yes. What is that standard? If the parent has a reasonable explanation for rejecting an offer, then she is substantially justified. If she can articulate the reason for rejecting an offer, she's substantially justified, if it's reasonable. Right. So reasonableness is part of it. Yes. Okay. Thanks. Thank you. Thank you. Thank you very much. Thank you. Thank you, Your Honors. A couple points. First, with respect to pending decisions and expectations from those decisions of higher rates, I'd just like to point out that we're focused on NGB here, and this Court's decision in SJ came out before NGB, and SJ affirmed highest rate, something on the magnitude of $360, which was dramatically lower than the rates that were requested, that the firm is claiming to have thought were possible when it rejected the offer. What is the standard that you want us to embrace in connection with determining whether something is, a declination is substantially justified? So we would advocate for a standard higher than reasonableness, and, again, I think the Supreme Court's decision in Pierce identified a plausible language at a higher level than what a reasonableness. I'm not clear. Are you saying that if the offer was higher than what the settlement offered, was enough more than what the person ultimately got, that that's enough, that that's all right? That you can't say that if what I offered you was more than what you actually got, then declining what I offered was unreasonable as a matter of law? Are you saying that? What we're arguing here, and I'm trying to directly answer your question, Your Honor, is that when an offer is rejected in hope of securing a rate that is well- That isn't a standard that goes into the minds of the lawyers, and I rarely get into the minds of lawyers. What I'm asking is, if you have a case, which this one may be, where the offer is higher than what the person ultimately got, but the offer was plausibly based, and that's arguable, on some error, then a finding of rejection is or is not all right. That's the question of the standard of law that I'm asking you. And language I would propose for the standard is something on the order of justified to a high degree or likely to prevail on the argument that's being made, and in the context of whether there was- I'm sorry, but he's saying good faith, reasonable belief. And you're saying, no, no, that's not enough, because why? And how is that rooted in the language of 1415? We are arguing that a reasonable belief is not enough and is not consistent with the statutory design because under that standard, as occurred in this case, any time a plaintiff has a remotely plausible argument or even a reasonable argument for expecting higher fees, they can turn down the settlement offer and proceed with the litigation. And our argument is that that is inconsistent with the statutory design, which is- We have it. Keep going. I don't know that I have it. Go ahead. Which is explicitly to encourage resolution of these types of disputes by settlement. The statute encourages both parties to assess their position and determine whether proceeding with the litigation is merited under those circumstances. Can you say that- I think you're suggesting that this explicit encouragement to settle, that's not really a force, a driving force to settle, is incompatible with the reasonable belief standard that your colleague here is asking us to embrace? Correct, Your Honor. There would be no pressure to assess whether a case is appropriate for settlement if a firm or a plaintiff could always come up with an argument that they could seek higher fees. So just give me one more second. So above reasonable belief, what is it that you're asking we should say? I believe possible language is justified to a high degree or likely to secure the rates that the firm believes it could secure if it were to continue litigating rather than settling the case. That's the most objective standard. That's correct. Thank you very much. We'll reserve the decision.